Ransom, S.
I concur in the very able opinion of the learned referee as to the effects of the “ Married Women’s Acts ” upon the property rights of the husband of deceased. While I differ with him as to the effect of the testimony of the husband, given upon cross-examination, as to what personal property was possessed by his wife, at the time of the marriage, I am of opinion that the-husband must have recourse to another tribunal for the effectual enforcement of his rights. Conceding that the testimony referred to established prima facie that prior to the act of 1848 his wife was possessed of the personalty mentioned, and that, in the absence of proofs as to its disposition, it must be held to-be represented in the assets which cam e to the executor, in that event the property is the husband’s by virtue of the marital relation; he is entitled solely to administer thereupon. Tompkins v. Rice, 29 St. Rep., 427, and cases cited. The surrogate has no. jurisdiction over an executor with respect to property of which, as executor, he had no right to take possession. Estate of Hall, Surr. Dec., 88,. p. 9. The daughters of testatrix were prominent objects of her solicitude, and it was her manifest design that they should be the chief beneficiaries of her bounty. With the clear light of this intention to elucidate this instrument, I am convinced that the report of the referee as to the fund from which the taxes, etc., are to-be paid is correct. The referee is in error as to the rent of the-Bridgeport house. It is a disputed claim, and the surrogate is without jurisdiction to determine the same. Inasmuch as the executor asserts a claim against the legatees, however, he is entitled to have reserved from the fund to which they may be entitled a sum sufficient to protect the estate in the event that it should be determined in an appropriate tribunal that they are-liable. Estate of Colwell, 15 St. Rep., 742. In schedule D the executor seeks credit for $2,249.90, amount of bill of E. A. Thayer for services in reducing assessments on real estate. One thousand dollars of this has been paid. It is claimed by the daughters that this sum should be charged upon the real estate, and the referee sustained this claim. The only evidence as to the claim is the voucher, which would indicate that the attorney procured reductions on various assessments upon the realty, and was to receive a stipulated fee of one-quarter of the amount of the reduction. Testatatrix died November 8, 1886, and the services all appear to have been rendered prior thereto. I think the referee is wrong in charging this debt against the realty. It was a personal obligation of the deceased, entered into during her lifetime ; the services were rendered while she was living. Unlike the assessments, it was no lien against the real estate, and, as suggested by counsel, it was not such a claim as could be enforced by proceedings in rein. In this- *143 regard the referee must be overruled. It might also be added that upon a sale of the real estate this debt, although contracted exclusively for the benefit of same, would in no wise reduce the amount of proceeds. Objection was made by the daughters to the items $1,500 and $239, being for services and disbursements of attorney for executor, it being claimed that a large portion of the services were rendered in connection with the sale of the real estate. The items are not disputed. The only evidence is the bill or voucher, which casts no light upon the matter, and the testimony at page 11, where the attorney himself swears that “ in round terms about three-fourths of the $1,500 fees belong to real estate, and of the disbursements all the items belong to the real estate account, except the two items for advertising for claims, $45.” In my opinion, charges incidental to the sale of the lots should be deducted from the sums realized, and are not to be paid out of the personalty. There is no proof before me, however, from which I can determine to which class the different items belong. Unless counsel can agree, the matter will be remitted to the referee for further proof on this point.
Cortlandt Irving, for executor, William Mitchell; E. A. S. Man, for Clara Isabelle Curtis, assignee; William Fullerton, for James L. Curtis.
Barrett, J.
We agree with the learned referee in the conclusion arrived at as to the main question presented in this matter, namely, that of equitable conversion. This question was elaborately considered by the learned referee, and nothing need be added to his able and convincing opinion on that head. The report in this particular was confirmed by the learned surrogate, .and an opinion filed expressing full concurrence with the referee’s views. Subsequently, however, the learned surrogate decreed that the taxes and assessments which accrued against the real -estate between the death of the testatrix and the date of the sale should not be paid out of the proceeds of such sale, but should be paid out of the income to be derived from the investment of these proceeds. This ruling, it seems to us, was not in harmony with his previous decision confirming the, report of the referee. By that report and the decision confirming it, the taxes and assessments which accrued upon the property prior to the death of the testatrix were directed to be paid out of the proceeds of the realty. This was upon the distinct ground that, in order to carry out the provisions of the will and the intentions of the testatrix, an equit.able conversion of the real estate into personalty for all the purposes of the will must be implied, and that such equitable conversion was thereby effected. If the reasoning which led to this conclusion was correct, and we think the referee has demonstrated its correctness, then all the liens upon the property, whether .accruing before or after the death of the testatrix, should be paid •out of the proceeds of the sale. The real estate in question was vacant land, and- no income was derived from it between the death ■of the testatrix and the time of the sale.
The cestuis que trust did not therefore benefit in the least from *144 this property, while the liens in question continued to accrue. And it was clearly the net proceeds of the sale, after paying all existing incumbrances, that is, existing at the time of such sale, which the testatrix intended by the fifth clause of her will to divide into eight equal portions. The reasoning with regard to the liens existing when the testatrix died applies equally to those which accrued down to the dot^ of the sale. We think, therefore, that the decree on this head should be affirmed on the executor’s appeal and reversed on the appeal of Clara Isabelle Curtis and Julia Frances Munson.
With regard to Mr. Curtis’ appeal, we concur in the result'arrived at by the learned surrogate, and also with the referee in the general discussion of the married women’s acts of 1848 and 1849.
As to the rent of the Bridgeport house, we differ with both the learned referee and the learned surrogate. That rent was due to the landlord and he assigned his claim therefor to Clara Isabelle Curtis. By this assignment Miss Curtis became entitled to payment quite the same as the landlord would have been had the assignment not been made. The- estate had no claim against Miss Curtis which could be set off against the debt for rent thus assigned. Whatever claim the estate had was against Miss Curtis: and her sister, Mrs. Munson, and even that was disputed. The remedy of the executor was by action against Miss Curtis and Mrs. Munson, and he was not entitled to reserve $500, or any sum,, from the personalty payable under the will to himself as trustee, or from the income ultimately coming to the beneficiaries. Section 2812 of the Code of Civil Procedure is inapplicable to the facts under consideration. There was here no “claim in controversy respecting the right of any person to share in the money to be distributed.” The decree in this respect should, therefore, be reversed, and the executor required, without reservation, to pay Miss Curtis the amount due for the rent in question, with interest. It should also be reversed in the particular already pointed out, and the executor required to pay all liens, assessments and interests out of the proceeds of the realty.
In all other respects the decree should be affirmed, with costs to the executor, and to Miss Curtis and Mrs. Munson, jointly, payable out of the fund.
Patterson, J., concurs.